FLETCHER *v.* DUNN.

4-3322

Opinion delivered January 29, 1934.

*Lamb & Adams,* for appellant.

*John S. Mosby,* for appellee.

BUTLER, J. This action was brought by the appellee under the provisions of §§ 6890, 6897, 6898 of Crawford & Moses' Digest to subject cotton raised by a tenant in the hands of his mortgagee to the payment of rent and advances made to the tenant of farm animals and implements, necessary for the making of a crop upon the plantation of appellee in Poinsett County, Arkansas. The appellants, as merchants, had advanced supplies to the tenant to aid in the making of his crop, and had taken a mortgage on the crop and certain chattels to secure the same. They defended on the ground that there had been a waiver of the landlord's lien in their behalf, and that the chattels alleged to have been sold to the tenant were not the property of the appellee, but belonged to her husband, and that as to these there could be no lien in her favor.

On the evidence adduced, the court found in favor of the appellee, sustaining the attachment and rendered

judgment for a sum agreed upon between her and the tenant as the true amount due, for the stock and implements in the sum of $600, for an item of $122.90, lands leased to the tenant and not cultivated, and a further sum of $25.81 interest, making a total of $867.21. The court further found that the appellants wrongfully converted the crops in that amount upon which the appellee had a lien, and rendered judgment against them.

It is the contention of the appellants that the evidence adduced sustains their position. It is conceded that, under § 6890, *supra*, the landlord would have a lien for the rent and for such articles as were necessary to enable him to make and gather his crop, and that stock and farm implements are such necessary articles. It may also be said that there is no contention that the finding of the chancellor to the effect that the landlord should have a lien on the crops for the land leased which was not cultivated was incorrect, it being stipulated in the lease contract that such land as was not cultivated should pay a stipulated rent per acre. Appellants pitch their sole contention for reversal on the defenses we have named which were set up in the answer.

We are of the opinion that the evidence fails to show any waiver of the landlord's lien. The two gentlemen who composed the mercantile firm both testified to the effect that they had had no agreement with the landlord about the waiver of her lien; that the tenant had been their customer before he rented the farm from the appellee, and, at his request, they furnished him necessary supplies to make his crop. They do not even say that the tenant informed them that the landlord would waive her lien. The testimony of the tenant is to the same effect.

The appellee's husband, her agent, stated that he knew that the appellants were furnishing the tenant supplies to make his crop, and that the lease contract itself stipulated that the tenant was to be furnished by some one other than the landlord, if possible. Mere knowledge that her tenant was being furnished supplies by another would not be sufficient to constitute a waiver of appellee's lien. *Jacobson* v. *Atkins*, 103 Ark. 91, 146 S. W. 133.

Neither would the fact that appellee knew that appellants were receiving the cotton be a circumstance to estop her from asserting her lien. It was in evidence that the appellants knew that the tenant was farming appellee's land, and she might well assume that they would not attempt to convert the proceeds of the crops to her prejudice, and her acquiescence in their conduct is not shown to have worked any harm to them or placed them in a situation less advantageous than they would have been had she objected to their handling the cotton.

The next contention is that the evidence introduced to establish the appellee's ownership of the mules and farm implements was incompetent because given by her husband, and that his knowledge with respect to the evidence given by him was not obtained while acting as her agent. The third subdivision of § 4146 of Crawford & Moses' Digest provides as follows: "The following persons shall be incompetent to testify: * * * Husband and wife, for or against each other, or concerning any communication made by one to the other during the marriage, whether called as a witness while that relation subsists or afterward, but either shall be allowed to testify for the other in regard to any business transacted by the one for the other in the capacity of agent."

The testimony of appellee's husband regarding the ownership of the property began by an answer to a question propounded by the appellants inquiring as to the time when appellee acquired title to the mules sold to the tenant. He answered that she acquired title to them when she bought the farm in 1925. It is then shown by one of the appellants that the appellee's husband had mortgaged this property since that date to secure an indebtedness of his own in which mortgage the appellee had not joined, and that in a previous lawsuit, since 1925, she had testified to the effect that the personal property on the farm belonged to her husband. The husband was called in rebuttal, and stated that the appellee had paid off from funds derived from a sale of some property of her own a judgment rendered in favor of the appellants in the previous litigation, and that he had then made a formal conveyance to her of the personal property on the farm,

to evidence which he had executed a bill of sale on December 15, 1929, which he exhibited as part of his deposition.

It is contended that this testimony was incompetent within the meaning of the statute last above quoted. It seems that the statute is a re-enactment of the common law which had its origin because of the legal identity of husband and wife, and, as under the common law no person in interest was permitted to testify in a case, married persons were prohibited from testifying for or against each other, since, because of their identity, the interest of one would clothe the other with the same relation to the suit. The rights of married women have been enlarged by our statutes so that for all intents and purposes their legal identity at common law has been destroyed (*Katzenberg* v. *Katzenberg*, 183 Ark. 626, 37 S. W. (2d) 696), and the wife's power to make her own separate contracts and deal with property is the same as if she were a *feme sole*. Married persons therefore are not to be supposed as constantly partaking of the confidence of each other, but rather as persons having adverse interests to maintain or else that they deal with respect to the property of each other in the relation of principal and agent. The plantation in question was the property of the appellee; the stock and farm implements used upon it were appurtenant and necessary to its operation, and in dealing with this property appellee's husband is presumed to have been acting as the agent of his wife. Section 5594, Crawford & Moses' Digest.

The bill of sale was evidence of the wife's ownership, and we are of the opinion that the evidence is sufficient to establish the agency of the husband, and to make his testimony competent. The fact that there are some discrepancies and contradictions in his testimony as to the time when the appellee first became the owner of the property and his dealings with it as contradictory of her testimony relating to her ownership, were questions of fact for the chancellor. On the whole case, we are of the opinion that the decree of the trial court is supported by a preponderance of competent testimony, and it is therefore affirmed.