ORAN JAMES PRIDDY AND DELPHINE PRIDDY v. MOSES WOOD AND JESSYE LYNN WOOD

4636                                              431 S.W. 2d 744

Opinion delivered September 23, 1968

*Gaughan, Laney, Barnes & Roberts* for appellant.

*Streett & Plunkett* for appellee.

CARLETON HARRIS, Chief Justice. This case concerns a disputed boundary line. Appellants, Oran James Priddy and wife, purchased Lots 1 and 2, Block 1, and property immediately south of Lot 1, all in Linebarier Subdivision in Ouachita County, Arkansas. The

property was purchased from Lloyd and Mildred Bumpass in May, 1967, the Bumpasses having owned the property for some 20 years. Moses Wood and wife, appellees herein, own the adjoining property to the east of appellants' property, having likewise owned same for a long number of years. Shortly before the sale of the property, Wood and Bumpas discussed the making of a survey for the purpose of determining the true boundary line[1]. The survey was made by the County Surveyor, and he found that the line extended over and onto the property which the Bumpasses had been using as their own. Subsequently, Wood started construction of a fence on the line established by the surveyor, to which the Priddys objected. The result was litigation in the Chancery Court between appellants and appellees relative to the ownership of the property[2]. On trial, the court held as follows:

" * * * that in July of 1967 it was agreed between Plaintiffs' and Defendants' predecessors in title that Grover Perry, the duly elected, qualified and acting County Surveyor for Ouachita County, should be employed for the purpose of making a survey and determining the location of the boundary line; that said Surveyor was so employed and thereafter made such survey and established said boundary line; that the Plaintiffs and Defendants herein, together with Defendants' predecessors in title, knew of the survey and the location of the boundary line as established thereby.

"The Court finds that all of the aforementioned parties mutually agreed upon, and established as between themselves, the boundary line, as established by the aforesaid survey, as the boundary line between the property owned by the Plaintiffs and Defendants; that afterwards the parties here-

---

[1] Actually, to make the purchase, appellants applied for a loan to the First Federal Savings and Loan Association, but the latter would not approve a loan until the land was surveyed.

[2] Suit was filed by appellees.

in occupied and used their property according to such boundary line * * * ."

The court then ordered:

"That the lawful boundary line between the lands owned by Plaintiffs and Defendants is the boundary line established by the survey of Grover Perry and agreed upon by the parties; and that each party shall own up to the agreed line as fully as if their respective deeds called for it."

From such decree, comes this appeal. For reversal it is simply asserted that the court's findings are against the law and the evidence.

The proof reflects that the Woods and the Bumpasses had lived on these adjoining properties for a long number of years without any dispute as to the property line. According to Grover Perry, County Surveyor for Ouachita County, he was first contacted by Mr. Bumpass to make the survey. Subsequently, this survey was made, and both Mr. Wood and Bumpass were present and assisted in making it. As a result, the property line was moved 20 feet to the west, taking that amount of the land now contended for by Priddy. Perry stated that there was no disagreement between the two men. According to the witness, Bumpass helped measure the line and placed the stobs; both accepted the survey. Perry stated that he had subsequently viewed the premises, and the fence posts had been placed by Wood on the section line, and in accordance with the survey.

Wood testified that the Bumpasses had been using the 20 feet as long as he had lived there. "We were neighbors and I told them to feel free to use it. Mr. Bumpass and I never had any dispute and I told him he could use my property anytime." The witness said that Bumpass stated that he (Bumpass) was not claiming anything except what his deed called for; the two

agreed to have the survey made, and Bumpass said that he would accept the Perry survey as the true line. Bumpass, according to Wood's evidence, indicated no dissatisfaction, and accepted the line as established. He said that when the Priddys moved onto the Bumpass property, the stakes marking the line were visible; that he (Wood), welcomed the Priddys as neighbors, and told them that they were welcome to use the property as the Bumpasses had done; a few days later, the stake that he had set in the driveway was pulled up, and he was subsequently interfered with in erecting a fence along the line. According to the survey, the Bumpass garage was partly on the Woods' property, and this garage was moved farther over on the Bumpass land. Wood took possession of the property 15 or 20 days later.

Mr. Bumpass did not testify, but Mrs. Bumpass stated that she and her husband had occupied the disputed strip since living on the premises; that she had planted flowers and fruit trees in this area; that Mr. Bumpass had placed a fence on what they had considered to be the line, and this fence had separated the Bumpass and Wood properties for 7 or 8 years. As to the survey, she told the court:

> "My husband told me that Mose had gone over to the First Federal and told them that the garage was on his property. My husband went out to the fence and asked Mose about it and my husband said to Mose, I understand you are claiming part of this land over here and Mose said, yes. Then Mose told him that he would like to have it surveyed because he didn't think our fence was on the section line and my husband told Mose that if he was willing to pay for the survey to go ahead. My husband said if you are willing to pay for the survey and it don't cost me anything, then I am willing to move my fence if I don't lose any land."

The Priddys also offered evidence that the Perry survey was in error. However, we think other facts

are controlling in the litigation, and there is no need to discuss this testimony.

Certainly, appellants cannot rely upon adverse possession by Bumpass to establish a claim to the land, for the evidence does not substantiate such a claim. Wood testified that Bumpass stated that he did not want any land except "what his deed called for," and this statement was not denied by Bumpass. In addition, the testimony of Wood as to the agreement relative to the survey is supported by Perry. This evidence was not disputed by Bumpass. Of course, if Bumpass had been making a claim to the disputed 20 feet by adverse possession, he would never have agreed to accept the survey line (even with the provision that Mrs. Bumpass said her husband made). It is very noticeable that both Mr. and Mrs. Bumpass were willing for their garage to be moved because the survey showed a portion of the Bumpass garage protruding upon the disputed strip; this was also known by the Priddys; in fact, the garage was moved before the appellants occupied the Bumpass property, and was placed in a location approved by the Priddys.

Appellants devote one paragraph to arguing that Mrs. Bumpass was the actual owner of Lot 1, and that she made no agreement. From appellant's brief:

"With regard to the evidence, Mildred Bumpass the owner of Lot 1 of the Linebarier Subdivision and the lot most affected by the movement of the boundary line in question[3], testified that she at time made any agreement with appellee Moses Wood relative to the movement of the boundary line and that she owned the property in her own name and at no time authorized anyone to make any agreement with the appellees."

We are not impressed with this asseveration. It is obvious from her testimony, heretofore quoted, that

[3]No deeds to establish ownership were introduced into evidence.

she knew about the survey, and certainly she knew that the garage was moved on account of the result of that survey. This was apparently done with her permission; at least, the record does not disclose any objection upon her part. These actions, coupled with the pertinent Arkansas Statute, prevent any conclusion of merit on the contention. Ark. Stat. Ann. § 55-412 (1947) provides that where a married woman permits her husband to have the custody, control, and management of her separate property, there is a presumption that the husband is acting as the agent of the wife⁴. Also, see *Fletcher* v. *Dunn,* 188 Ark. 734, 67 S.W. 2d 579. In the present case, the arrangements for the sale to the Priddys were apparently handled by Mr. Bumpass, including (according to Perry) the participation of Bumpass in obtaining the surveyor and assisting in running the line.

The record reflects that Mr. Priddy was entirely aware of the survey and the location of the stobs on the survey line before he moved onto the property. He was also cognizant of the moving of the garage. From the record:

"Q. When did you and your family first move onto this property?

A. It was sometime in July.

Q. Had the garage been moved prior to that time, Mr. Priddy?

A. Yes.

Q. Did you know beforehand that it had been moved?

A. Yes.

Q. Did you or your wife or anyone on your behalf instruct where to move that garage, where it should be placed?

---

⁴This presumption, of course, can be overcome by evidence.

A. Yes.

Q. Did you object to Mr. Wood or anyone else about moving the garage?

A. No."

He subsequently said that he "never did recognize the stobs as a boundary line," and that he had no objection to the garage being moved as he had not intended to use it as a garage.

To summarize, it is evident that there was uncertainty as to the true location of the boundary line. There was sufficient evidence of an agreement between the parties to support such a finding by the Chancellor, and finally, Wood took possession of the strip in controversy. The fact that the survey was made and the agreement reached only a short time prior to the dispute is of no importance. In *Smith* v. *Mefford,* 243 Ark. 561, 420 S.W. 848, we upheld the Chancellor in finding that a boundary line had been agreed upon though appellant, after entering into an agreement, changed his mind two days later and "called off" the agreement.

We are unable to say that the Chancellor's holding, in defining the boundary lines to which the deeds extended, was against the preponderance of the evidence.

Affirmed.